**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE ESTATE OF CHARLENE** | : | **CIVIL ACTION NO. 1:06-CV-1945** |
| **PENDELTON, decedent, by and** | : | |
| **through the administratrix of the** | : | **(Judge Conner)** |
| **estate, TEAH PENDELTON, et al.,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TERRY DAVIS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Presently before the court are the Dauphin County Defendants' and the

Blust Defendants'[1] motions to dismiss the amended complaint.  The parties dispute

whether Plaintiffs sufficiently state claims for constitutional violations under three

theories of liability pursuant to the Fourteenth Amendment's Due Process Clause

and 42 U.S.C. § 1983 – the state-created danger theory, the special relationship

theory, and the policy, custom, or practice theory.

---

[1] Plaintiffs' amended complaint names as Defendants Dauphin County and a number of individuals who work for Dauphin County in various capacities.  The court will refer to the following Defendants collectively as "the Dauphin County Defendants": Dauphin County; Terry Davis; Kerry Stackhouse; Jeffrey Haste; Dominic DiFrancesco, II; George Hartwick, III; Darlene Roadcap; Robert Klepic; Andrew Bacha; Daren Sharp; Orville Jackson; Kevin Barrick; Jennifer Kita; Cory Everett; Douglas Senott; and Nicole Fair.  The court will refer to the following Defendants collectively as the "the Blust Defendants": Russell Blust; Russell Blust Electrical and Mechanical Services; Russell Blust Electrical Services; and Russell Blust Construction, Electrical and Property Management.  The court notes that Plaintiffs refer to many of the Dauphin County Defendants and the Blust Defendants collectively as "Dauphin Defendants" in the amended complaint, but the court will maintain two separate designations for purposes of clarity.

In addition, the Dauphin County Defendants assert immunity from Plaintiffs' state law claims under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541.  The Blust Defendants contend that Plaintiffs fail to sufficiently allege a state negligence claim and, in the alternative, assert immunity under the Political Subdivision Tort Claims Act.  Plaintiffs counter that Defendants' conduct falls within the willful misconduct exception to that Act, 42 Pa. Cons. Stat. Ann. § 8550, which Defendants argue does not apply here.

The threshold question before the court is whether Plaintiffs have set forth sufficient facts to establish § 1983 state-created danger, special relationship, or policy, custom, or practice claims against the Dauphin County or Blust Defendants. For the reasons that follow, the court concludes that Plaintiffs fail to state substantive due process claims under any of these theories.  Plaintiffs' failure to establish any of their federal claims precludes the court's consideration of questions relating to the state law claims.  Accordingly, the court will grant the Dauphin County and Blust Defendants' motions to dismiss.

## I.   <u>Statement of Facts</u>[2]

On October 23, 2004, Defendant Alton Blakely, who was driving with a blood alcohol content of .159%, caused a head on collision with an automobile

---

[2]  In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint.  See Fed. R. Civ. P. 12(b)(6); <u>Empire Kosher Poultry, Inc. v. United Food & Commercial Workers Health & Welfare Fund of N.E. Pa.</u>, 285 F. Supp. 2d 573, 577 (M.D. Pa. 2003).  The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the allegations of the complaint.

driven by Charlene Pendelton.  (Doc. 7 ¶¶ 1, 55, 56.)  Tragically, Charlene Pendelton died as a result of the accident and Plaintiffs Teah Pendelton, Amber Johnson, and Ernest Eden, were severely injured.  (Id. ¶¶ 34, 39-41.)

Prior to and on the day of the accident, Blakely was an inmate at the Dauphin County Prison Work Release facility located at 919 Gibson Road, Harrisburg, Pennsylvania, serving time for a Driving Under the Influence of Alcohol (DUI) conviction.  (Id. ¶¶ 45-46, 50.)  Blakely had multiple DUI convictions and his driver's license was suspended.  (Id. ¶ 46.)

Through the work release program, Blakely was permitted to leave the work release facility daily to work for Defendant Russell Blust and his businesses.  (Id. ¶ 47.)  Blakely returned to the work release facility at the conclusion of work each day.  (Id.)  The Dauphin County Defendants and Blust knew that, although Blakely's driver's license had been suspended, he regularly drove his white 1989 Cadillac to and from, and while out on, work release.  (Id. ¶¶ 48, 50.)  The Dauphin County Defendants and Blust were also aware that Blakely had ready access to money as a result of his employment.  (Id. ¶ 48.)

On October 22, 2004, Blakely drove his Cadillac to the work release facility and parked in the work release parking lot when he returned for night lock down.  (Id. ¶ 50.)  One of the parole officers or supervisors on duty at the facility asked Blakely if he had been driving his car and Blakely said that he had.  (Id. ¶ 51.)  The officer responded, "Okay, I just wanted to see if you would tell me the truth."  (Id.)

On October 23, 2004, Blakely exited the work release facility, got into his Cadillac, and drove to the 4 Aces Bar and Grill a/k/a 4 Aces Lounge (hereinafter "4 Aces") at 1105 Herr Street, Harrisburg, PA. (Id. ¶ 52.)  While at the 4 Aces, Blakely was served alcohol while he was visibly intoxicated. (Id. ¶ 53.)  The 4 Aces is the only establishment and the only location where Blakely consumed alcohol on October 23, 2004. (Id. ¶ 54.)

Blakely subsequently left the 4 Aces, with his stepson, Ernest Eden, in his car, and drove eastbound on Maclay Street at a high speed. (Id. ¶ 55.)  Blakely crossed over the double yellow center lines and collided head on with a westbound vehicle driven by Charlene Pendelton, which held passengers Teah Pendelton and Amber Johnson. (Id.)  As a result, Blakely was convicted of a DUI, as well as other offenses. (Id.)

Plaintiffs commenced this action by filing a complaint (Doc. 1) on October 6, 2006.  Plaintiffs filed a seven-count amended complaint on October 20, 2006 (Doc. 7), alleging federal and state law claims against the Dauphin County and Blust Defendants, as well as state law claims against Blakely d/b/a Blakely Construction, and the 4 Aces and related individuals.[3]  Plaintiffs alleged three claims arising from

---

[3] The amended complaint also names as Defendants Frank and Eline Karnouskos and D.G. Angelopoulos, Inc., as owners of the 4 Aces ("the 4 Aces Defendants").  Blakely and the 4 Aces Defendants filed answers to the complaint on January 5, 2007, and November 28, 2006, respectively.

constitutional substantive due process violations under 42 U.S.C. § 1983, as well as state negligence, dram shop, wrongful death, and survival claims.[4]

On December 14, 2006, the Dauphin County Defendants filed a motion to dismiss the amended complaint (Doc. 27).  The Blust Defendants filed a motion to dismiss the amended complaint (Doc. 30) on December 20, 2006.  Both motions have been briefed and are ripe for disposition.

## II.   **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims that fail to assert a basis upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). In the context of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.  Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).  Although the court is generally limited in its review to the face of the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules do not require plaintiffs to allege affirmatively every aspect of their claims, but only to present sufficient facts to allow the

---

[4] As noted, the § 1983 claims are alleged against only the Dauphin County and Blust Defendants.

opposing party to conduct discovery and prepare a defense.  See Fed. R. Civ. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Thus, courts should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id.; see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  Under this liberal pleading policy, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

III.   **Discussion**

A.   **Official-Capacity Suit**

The Dauphin County Defendants make a threshold argument that Plaintiffs' § 1983 claims should be dismissed as to the individual Defendants in their official capacities because the official-capacity claims merge into the claim against Dauphin County.  Monell v. Department of Social Services provides that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  436 U.S. 658, 690 n.55 (1978).  The Supreme Court has also stated that because of its holding in Monell, "[t]here is no longer a need to bring official-capacity actions against local government officials."  Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985).  The Third Circuit has relied on the Supreme Court's interpretation of Graham and Monell as a basis for dismissing official-

6

capacity claims against individual defendants.  See Stacey v. City of Hermitage, 178

F. App'x 94, 100 (3d Cir. 2006) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)).

Accordingly, the court will grant the Dauphin County Defendants' motion to

dismiss with respect to the official-capacity suits against the individual Dauphin

County Defendants.

     **B.**     **42 U.S.C. § 1983 Claims**

     Plaintiffs' amended complaint raises claims pursuant to three theories of

liability under the Fourteenth Amendment and 42 U.S.C. § 1983.[5]  Section 1983

provides protection where official action causes a "deprivation of rights protected

by the Constitution."  Monell, 436 U.S. at 690.  However, § 1983 is not an

independent source of substantive rights.  Baker v. McCollan, 443 U.S. 137, 144 n.3

(1979); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Rather, "it provides only

remedies for deprivations of rights established elsewhere in the Constitution or

federal laws."  Kneipp, 95 F.3d at 1204; see also Collins v. City of Harker Heights,

503 U.S. 115, 119 (1992) (Section 1983 "does not provide a remedy for abuses that do

---

     [5] Section 1983 provides, in relevant part, that

     Every person who, under color of any statute, ordinance, regulation,
     custom, or usage, of any State or Territory or the District of Columbia,
     subjects, or causes to be subjected, any citizen of the United States or
     other person within the jurisdiction thereof to the deprivation of any
     rights, privileges, or immunities secured by the Constitution and laws,
     shall be liable to the party injured in an action at law, suit in equity, or
     other proper proceeding for redress . . . .

42 U.S.C. § 1983.

not violate federal law."). In order to establish a § 1983 claim, a plaintiff must demonstrate, first, the deprivation of a constitutional right, and, second, that a "person acting under the color of state law" is responsible for the alleged deprivation. Kneipp, 95 F.3d at 1204 (internal citations omitted); Collins, 503 U.S. at 120.

Plaintiffs base their § 1983 claims on alleged violations of the substantive due process protections of the Fourteenth Amendment. The Fourteenth Amendment's Due Process Clause limits the State's power to act, but does not place an affirmative obligation upon the State to act; it does not guarantee "certain minimal levels of safety and security." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). The Due Process Clause "confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id. at 196.

"Although the general rule is that the state has no affirmative obligation to protect its citizens from the violent acts of private individuals, courts have recognized two exceptions to this rule." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir. 1997). One exception is the state-created danger theory. Id. The other is known as the "special relationship" exception. Id.

In Counts I, II, and III, Plaintiffs allege claims under each of these exceptions, as well as under a policy, custom, or practice theory. The court will discuss each in turn.

8

### 1.   <u>The Blust Defendants as State Actors</u>

The Blust Defendants challenge their status as state actors in connection

with one of the required elements of a state-related danger claim.  The court will

address this issue at the outset because it impacts all of Plaintiffs' § 1983 claims

against the Blust Defendants.  <u>See</u> <u>Black v. Indiana Area Sch. Dist.</u>, 985 F.2d 707,

709 (3d Cir. 1993) (If the defendants are not state actors, "they can have no liability

under 42 U.S.C. § 1983.").  Plaintiffs do not allege that Russell Blust was a direct

officer or employee of Dauphin County; they characterize him as an "agent and

servant of Dauphin County and Work Release."  (Doc. 7 ¶ 27.)  Plaintiffs further

allege that "[a]t all times material, [Blust] acted under color of state law and

authority and within the course and scope of his employment."  (<u>Id.</u>)  The amended

complaint also states that Russell Blust was the owner of three businesses that

employed Blakely.  (<u>Id.</u> ¶¶ 28-30.)

The court is not bound to accept unsupported conclusory statements as true.

<u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).  Therefore, although Plaintiffs assert that

Blust acted under color of law, the court will examine the factual allegations to

determine whether they may support such a claim.  The bulk of Plaintiffs'

allegations make it clear that Blust was an owner of independent businesses and

not an officer or employee of Dauphin County.  There is no suggestion that the

businesses were somehow associated with Dauphin County through anything other

than Blust's participation as an employer in the work release program.  Therefore,

the court must determine whether the Blust Defendants' involvement with the

work release program constitutes conduct that was "fairly attributable to" Dauphin

County.  Black, 985 F.2d at 710.

In this regard, the court notes that

> a state contractor and its employees are not state actors
> simply because they are carrying out a state sponsored
> program and the contractor is being compensated
> therefor by the state.  Nor does the fact that the activity
> being performed is a public function render the
> contractor and its employees state actors.  For the nature
> of the contractor's activity to make a difference, the
> function performed must have been traditionally the
> *exclusive* prerogative of the State.

Id. (internal quotation omitted).  The Blust Defendants cannot be established as

state actors generally, given that electrical, mechanical, construction, and property

management services do not fall within "the exclusive province of" Dauphin

County.  See id.  However, Plaintiffs have sufficiently alleged that the Blust

Defendants were state actors solely within the context of supervision of work

release inmates.  The amended complaint alleges that while Blakely was on work

release, Blust, as the work release employer, was responsible for the "supervision

and control" of Blakely.  (Doc. 7 ¶ 47.)  The supervision and control of inmates such

as Blakely falls within the exclusive province of Dauphin County.  Accordingly, to

the extent that liability arises from such supervision, Russell Blust and the Blust

Defendants may fairly be considered state actors for § 1983 purposes.[6]  The court

will proceed to its substantive review of Plaintiffs' § 1983 claims.

### 2.   Count I – State-Created Danger

Courts have interpreted DeShaney as creating a substantive due process

obligation only in circumstances where the State affirmatively creates a danger or

increases a victim's vulnerability to harm.  See DeShaney, 489 U.S. at 201 ("While

the State may have been aware of the dangers that [the victim] faced in the free

world, it played no part in their creation, nor did it do anything to render him any

more vulnerable to them.").  In Kneipp, the Third Circuit adopted the state-created

danger theory "as a viable mechanism for establishing a constitutional violation

under 42 U.S.C. § 1983."  95 F.3d at 1201.

In order to establish a state-created danger claim, Plaintiffs must allege the

following essential elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

---

[6]  The court notes that this conclusion is driven by the procedural posture of the case.  Although the Blust Defendants assert that they were not responsible for supervising Blakely on a day that he was not scheduled to work, the court may not consider this assertion at the motion to dismiss stage.  The amended complaint neither contains this fact, nor permits such an inference.  See Langford, 253 F.3d at 847.

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotations and footnotes omitted); Sanford v. Stiles, 456 F.3d 298, 304-05 (3d Cir. 2006).

Plaintiffs allege that the following acts by the Dauphin County and Blust Defendants created a danger to Plaintiffs as motorists and passengers on the public roadways in the vicinity of the work release facility: 1) permitting Blakely to operate his vehicle despite knowing that his license had been suspended, that he had previous DUI convictions, and that his work release employment provided Blakely with ready access to money; 2) telling Blakely that they knew he was driving his vehicle and that it was okay for him to do so; and 3) facilitating Blakely's working for Blust, knowing that he would not supervise Blakely.  (Doc. 7 ¶¶ 62-64.)

On these and other facts alleged in the amended complaint, Plaintiffs sufficiently plead only the third element, the relationship element.  Plaintiffs fail to sufficiently allege the first, second, and fourth elements – the requisite foreseeability, culpability, and affirmative action.  The court will address the relationship element first, then consider the remaining elements in turn.

a.      **Third Element – Relationship**

The Dauphin County Defendants and the Blust Defendants challenge whether the alleged relationship between Plaintiffs and Defendants is sufficient to sustain a state-created danger claim.  Both groups of Defendants maintain that Plaintiffs fail to allege that they were anything other than members of the general

12

public.  In order to state a claim under the state-created danger theory, a plaintiff must allege that a "relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general."  <u>Bright</u>, 443 F.3d at 281.  In a case involving the potential harm associated with an intoxicated driver, an allegation of danger to a class of motorists on a particular road or in a particular geographic area is sufficient to satisfy the relationship requirement of the state-created danger theory.  <u>See</u> <u>Reed v. Gardner</u>, 986 F.2d 1122, 1126-27 (3d Cir. 1993) (police officers' decision to arrest a driver, but leave a drunk passenger in the car with the keys, was sufficient to render "motorists on [the nearby roadway] vulnerable to a dangerous driver"); <u>Morse</u>, 132 F.3d at 913 (recognizing that the <u>Reed</u> plaintiffs established a sufficient relationship even though "[c]learly the act of placing a drunk driver at the wheel of the car did not create a danger to the [victims] specifically").

The amended complaint alleges that "Defendants' affirmative actions which permitted Blakely to continue to break the law by driving on a suspended license, created a special danger to motorists and their passengers on the public roadways *in the vicinity of the Work Release facility*," (<u>id.</u> ¶ 65) and that "Defendants deliberately, recklessly, maliciously, outrageously, and conscience shockingly disregarded a great risk of serious harm to the safety of motorists and passengers traveling *in the vicinity of the instant Work Release Center*" (<u>id.</u> ¶ 67).  (Emphasis

13

added.)  In light of the principles set forth in <u>Reed</u> and <u>Morse</u>, the court finds that Plaintiffs' description of Charlene Pendelton and her passengers as members of a group of "motorists and passengers traveling in the vicinity of" the work release center identifies a sufficiently discrete class of persons to satisfy the relationship element of the state-created danger claim at the motion to dismiss stage.[7]

### b.    First Element – Foreseeability of Harm

The Dauphin County and Blust Defendants challenge whether Plaintiffs have sufficiently alleged the foreseeability element of the state-created danger claim.  It is, admittedly, a close call, but based on the court's review of applicable case law, the court finds that the allegations in Plaintiffs' amended complaint cannot survive Defendants' motions to dismiss with respect to the element of foreseeability.

As a threshold matter, the court acknowledges that Plaintiffs have alleged that Charlene Pendelton's death and the other Plaintiffs' injuries were the "direct and proximate result of the accident."  (Doc. 7 ¶¶ 57-60.)  However, as previously noted, the court's obligation to accept all of the factual allegations in the amended complaint as true, <u>Langford</u>, 235 F.3d at 847, does not extend to unwarranted inferences, unsupported conclusions, or "legal conclusions couched as factual allegations," <u>Papasan</u>, 478 U.S. at 286; <u>Schuylkill Energy Res., Inc. v. Pa. Power &</u>

---

[7]  The court notes that Plaintiff Eden's status as a passenger in Blakely's vehicle, rather than in Charlene Pendelton's vehicle, could potentially bear upon the court's analysis with respect to Eden's ability to satisfy the first element.  In the absence of any argument by the parties, the court declines to address this question. Accordingly, the court's finding that the relationship element is sufficiently alleged extends to Eden as well.

14

Light Co., 113 F.3d 405, 417 (3d Cir. 1997); see also Morse, 132 F.3d at 908 (court did

not need to accept the "bald assertion" in the complaint that the state's actions

were the foreseeable and fairly direct cause of the harm).  Therefore, the court will

consider whether the facts alleged sufficiently establish the causation required for a

state-created danger claim.

In Morse, the Third Circuit reviewed foreseeability and causation in a

number of factual scenarios that had come before the courts.[8]  High school officials

in Morse left a rear entrance unlocked for contractors, who subsequently propped

the door open, allowing a mentally unstable individual to enter the school and

fatally attack a teacher.  Id. at 904.  The court held that causation in those

circumstances was too attenuated.  Id. at 909.  In reaching its conclusion, the Morse

court contrasted its facts to those of Kneipp, as well as Wood v. Ostrander, 879 F.2d

583 (9th Cir. 1989) and Cornelius v. Town of Highland Lake, 880 F.2d 348 (11th Cir.

1989) overruled by White v. Lemacks, 183 F.3d 1253, 1259 (11th Cir. 1999).

In Kneipp, the police left a "visibly inebriated and incapacitated woman"

alone on the road after separating her from her husband.  Morse, 132 F.3d at 909

(discussing Kneipp, 95 F.3d at 1208.).  In Wood, police arrested a drunk driver at

night, impounded the car, and left the female passenger "stranded on the road in a

notoriously high crime area," where she subsequently accepted a ride from an

---

[8] The Morse court, in reviewing the district court's dismissal of a state-created danger claim, specifically considered what was required to plead a *prima facie* claim.  Id. at 903.

unknown man who raped her.  Morse, 132 F.3d at 909 (discussing Wood, 879 F.2d at

590).  The Wood court considered the "inherent danger" associated with leaving a

woman "alone at night in an unsafe area" to be foreseeable "as a matter of common

sense."  879 F.2d at 590.

In Cornelius, on facts that are very analogous to the instant facts, the

Eleventh Circuit reasoned that town and prison officials who brought inmates

known to be violent offenders into the community for a work squad program, then

failed to adequately supervise them, were liable for the harm caused when the

inmates abducted and terrorized a woman who worked in the building where the

work squad was assigned.  880 F.2d at 357-358 ("These facts show a sufficiently

close nexus between the defendants' actions and the resulting [harm]."), discussed

by Morse, 132 F.3d at 909.[9]

The Third Circuit rounded out its foreseeability review in Morse by

distinguishing the degree of foreseeability in Kneipp, Wood, and Cornelius, from

that in Gregory v. City of Rogers, 974 F.2d 1006 (8th Cir. 1992).  In Gregory, a

---

[9] Although the Eleventh Circuit later, in White, overruled Cornelius with
respect to the state-created danger claim, the court's rationale focused on the level
of culpability required and the interpretation of "conscience-shocking" in light of
Collins, 503 U.S. 115, and County of Sacramento v. Lewis, 523 U.S. 833 (1998).  See
White, 183 F.3d at 1256-59.  Accordingly, it is unclear whether the foreseeability
analysis of Cornelius is still good law in the Eleventh Circuit.  In the Third Circuit,
however, the Morse court's assessment – that Cornelius served as an example of
circumstances that are sufficient to satisfy the foreseeability prong – is still
applicable, even though Morse was decided two years before White overruled
Cornelius.  For these reasons, the court will consider the implications of Morse's
evaluation of Cornelius.

designated driver went into a police station to clear up an outstanding warrant issue, leaving intoxicated passengers in the car who subsequently drove off and caused an accident.  <u>Morse</u>, 132 F.3d at 909-10 (discussing <u>Gregory</u>, 974 F.2d at 1011-12).  Even if the police were aware that the passengers were intoxicated, it was the driver's act of leaving the keys in the car that broke the chain of foreseeability.  <u>Morse</u>, 132 F.3d at 910.

Considering the spectrum of cases reviewed by the Third Circuit, the court agrees that the harm was more foreseeable and direct in <u>Kneipp</u> and <u>Wood</u> than in <u>Gregory</u>.  The instant facts, like those of <u>Cornelius,</u> involve circumstances that seem to fall somewhere in between.  Despite the similarity between the instant facts and those of <u>Cornelius</u>, the court finds critical differences, to wit:  the nature of the inmates' propensities, and the likely triggers of their relevant conduct.  In <u>Cornelius</u>, each of the work squad inmates had a history of violent conduct.  880 F.2d at 357.  The circumstances that may trigger an individual's violent predilections are not necessarily tied to a specific location or activity, or require any external stimulus.  In contrast, Blakely's tendency to drive under the influence of alcohol could only manifest itself after he independently accessed alcohol, became intoxicated, and decided thereafter to operate a motor vehicle.  Blakely could not commit a DUI without taking several extra steps outside of the constructs of the work release program; steps that would not be immediately apparent or foretold simply because of a lack of proper supervision.  This fundamental distinction

17

between Blakely's propensities and those of the <u>Cornelius</u> inmates may seem

subtle, but it is sufficient to break the chain of foreseeability here.

Therefore, the court finds that the facts alleged fail to establish a sufficient

nexus between the accident and the Dauphin County and Blust Defendants'

decisions regarding Blakely's participation in the work release program and use of

his car in the vicinity of the work release facility.  Plaintiffs' state-created danger

claim fails with respect to the foreseeability element.

### c.   <u>Second Element – Culpability that Shocks the Conscience</u>

Plaintiffs' amended complaint also fails to establish that the Dauphin

County or Blust Defendants acted in a manner that shocks the conscience.  The

question of whether conduct shocks the conscience "has an elusive quality to it."

<u>Sanford</u>, 456 F.3d at 301.  In <u>Sanford</u>, the Third Circuit attempted to clarify what it

described as "often the most difficult element for a plaintiff to prove."  <u>Id.</u> at 305.

After an extensive review of the case law developing the standard of culpability in

state-created danger cases, <u>see</u> <u>id.</u> at 305-309, the court concluded that

> in *any* state-created danger case, the state actor's behavior must
> *always* shock the conscience.  But what is required to meet the
> conscience-shocking level will depend upon the circumstances of each
> case, particularly the extent to which deliberation is possible.  In some
> circumstances, deliberate indifference will be sufficient.  In others, it
> will not.

<u>Id.</u> at 310.  Importantly, "[m]ere negligence is not enough to shock the conscience."

<u>Id.</u> at 311.

18

Within this framework, the court articulated three guidelines to aid courts in assessing the level of culpability required to shock the conscience, which "increases as the time state actors have to deliberate decreases." Id. at 309. In "hyperpressurized" environments, where state actors have little, if any, time to deliberate, "an intent to cause harm is usually required." Id. At the other end of the spectrum, where officials have time to deliberate and make "unhurried judgments," deliberate indifference suffices. Id. In "circumstances involving something less urgent than a 'split-second' decision but more urgent than an 'unhurried judgment'" – circumstances that call for "hurried deliberation" and require action in "a matter of hours or minutes" – "[a] plaintiff must show that the defendant consciously disregarded, not just a substantial risk, but a *great* risk that serious harm would result." Id. at 307, 310 (citing Ziccardi v. City of Phila., 288 F.3d 57, 65, 66 (3d Cir. 2002)).

Courts that have considered questions involving the failure of state actors to supervise, or policies resulting in the failure to take specific actions, have applied the deliberate indifference standard. See Lewis, 523 U.S. at 851 ("[I]n the custodial situation of a prison, forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare."), compare with Scheiber v. City of Phila., 320 F.3d 409, 421 (3d Cir. 2003) (suggesting that a mid-level fault standard applied where police officers had to investigate and make an "on the scene" determination whether to break into victim's apartment in the middle of the night); Miller v. City

19

of Phila., 174 F.3d 368, 375-76 (applying mid-level standard in the context of a social worker's decisions regarding an emergency order to separate a parent and child) and Lewis, 523 U.S. at 854 (applying the "intent to harm" standard in the context of a high-speed police pursuit case).  Hence, the court finds deliberate indifference to be the appropriate standard in the case *sub judice.*

The facts alleged do not support a finding that the Dauphin County or Blust Defendants acted in a way that shocks the conscience under a deliberate indifference standard.  This conclusion flows inexorably from a comparison of the instant facts to other cases involving conduct that courts found did not shock the conscience.  For example, in Collins, a city sanitation worker died from asphyxia after entering a manhole to work on a sewer line.  503 U.S. at 117.  His widow alleged that the city was liable for her husband's death because it failed to train or warn its employees regarding the known risks associated with such work.  Id. at 126.  The Supreme Court, applying a deliberate indifference standard, id. at 123, affirmed the dismissal of the claim, finding that it was "analogous to a fairly typical state-law tort claim," but was not conscience-shocking in a constitutional sense, id. at 128.

In Kaucher, a corrections officer and his wife claimed that they contracted infections caused by a drug-resistant strain of staph bacteria due to the officer's exposure to infected inmates.  455 F.3d 418, 421-22 (2006).  Although the prison officials had a few policies in place and took certain actions in response to particular outbreaks, the plaintiffs maintained that prison officials failed to provide

sufficient medical care or adequate warnings to their employees about the risks of infection, and misrepresented the extent of the problem and the associated risks. Id. at 423, 429.  The Third Circuit affirmed summary judgment for the defendants because the plaintiffs failed to establish "conduct that rises to a level of deliberate indifference that could be characterized as conscience shocking."  Id. at 431.

In Hall v. Feigan, a police officer encountered a woman inside a convenience store who he knew was a recidivist speeder and who he knew or should have known had been drinking.  104 F. App'x 247, 248-49 (3d Cir. 2004).  The officer elected "not to enforce the driving while intoxicated laws" against the woman, who crashed into the victim five minutes after leaving the convenience store, causing serious permanent injuries.  Id. at 249.  The Third Circuit found that the officer's conduct was not conscience-shocking in the constitutional sense.  Id. at 250.

The court has also considered the contrasting factual background of cases in which courts found liability under the deliberate indifference standard.  Among these cases is Kneipp, where police officers stopped an extremely inebriated woman and her husband, who were walking along the roadway late at night, questioned them for a period of time, then permitted the husband to return home alone while they continued to question the woman.  95 F.3d at 1201-02.  The officers subsequently sent the woman home alone and she was later found unconscious at the bottom of a nearby embankment.  Id. at 1203.  The woman suffered hypothermia, which caused a decrease in the amount of oxygen delivered to her brain, and resulted in permanent brain damage.  Id.  In addition, in Wood, which

21

the court discussed previously, police officers arrested a drunk driver, impounded the car, and left the driver's female passenger stranded alone in a dangerous neighborhood at night, where she subsequently encountered a man who raped her. 879 F.2d at 588.  The facts of <u>Kneipp</u> and <u>Wood</u> evidence a disregard of an immediate and direct danger that is distinguishable from the Dauphin County and Blust Defendants' lack of direct knowledge regarding Blakely's intoxication or his decision to drive while intoxicated.[10]

Accordingly, the court finds that Plaintiffs' amended complaint fails to allege sufficient facts to establish the culpability element of a state-created danger claim.

### d.   Fourth Element – Affirmative Act

Plaintiffs' amended complaint is also deficient in that it fails to allege that the Dauphin County or Blust Defendants acted in an affirmative manner; instead Plaintiffs allege a failure to act.  A Due Process Clause violation that is premised on the state-created danger theory must assert a "misuse of state authority, rather than a failure to use it."  <u>Bright</u>, 443 F.3d at 282; <u>see also</u> <u>Kaucher</u>, 455 F.3d at 433, 433 n.11 ("[F]ailures to act cannot form the basis of a valid § 1983 claim.").  Likewise, "the state cannot 'create danger' giving rise to substantive due process liability by

---

[10]  The court is also guided by the Eleventh Circuit's express overruling of <u>Cornelius</u>, based upon its finding that the conduct at issue in <u>Cornelius</u>, where town and prison officials introduced inmates into a particular part of the community via a work squad, did not amount to conscience-shocking conduct in the constitutional sense.  <u>See</u> <u>White</u>, 183 F.3d at 1258-59 (<u>Cornelius</u>'s issue regarding adequate supervision involved a resource-allocation choice that was more analogous to a state-law tort claim and did not "rise to the level of a [constitutional] substantive due process violation.").

failing to more expeditiously seek someone's detention, [or] by expressing an intention to seek such detention without doing so." Bright, 443 F.3d at 283-84 (discussing failure to act in the probation context; also finding that "taking note of a probation violation without taking steps to promptly secure the revocation of the probationer's probation" is an insufficient basis for § 1983 liability).

Moreover, an affirmative act on its own may not be sufficient. Id. at 283 n.7. "The test also requires a direct causal relationship between the affirmative act and foreseeable harm to the plaintiff." Id. In other words, the fourth element is not satisfied unless there is "but for" causation. Kaucher, 455 F.3d at 433.

The majority of the facts alleged in the amended complaint fall in the failure to act category. Plaintiffs essentially allege that the Dauphin County and Blust Defendants failed to act with respect to their knowledge that Blakely was driving unsupervised and without a valid license. They also allege failures of supervision or training. None of these allegations meets the affirmative act requirement of the state-created danger test.

Further, the only affirmative act alleged in the amended complaint is the act of placing Blakely in the work release program. This allegation fails because it lacks "but for" causation. The mere act of placing Blakely into the work release program, despite his history of DUI offenses, is simply too far removed from the harm that occurred to satisfy the causation aspect of the affirmative act requirement. Accordingly, Plaintiffs' amended complaint does not sufficiently set forth the fourth element of a state-created danger claim.

23

In sum, the court finds that Plaintiffs fail to allege a cause of action under the state-created danger theory because they are unable to sustain the first, second, and fourth elements of such a claim.  In addition, the court finds that amendment in this regard would be futile.  <u>Alston v. Parker</u>, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.").  Therefore, the court will grant Defendants' motions to dismiss Count I, with prejudice.

### 3.   <u>Count II – Special Relationship</u>

Plaintiffs fail to show that a special relationship exists because they cannot establish that a custodial or similar relationship existed between Plaintiffs and the Dauphin County Defendants.  <u>DeShaney</u> recognized that in circumstances where the State has affirmatively acted in a manner that imposes limits on an individual's "freedom to act on his own behalf," that deprivation of liberty triggers a corresponding duty under the Due Process Clause.  489 U.S. at 200.  It is only when the State "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic needs–*e.g.* food, clothing, shelter, medical care, and reasonable safety"–that a violation of the Due Process Clause occurs.  <u>Id.</u>  Therefore, only in limited circumstances associated with "incarceration, institutionalization, or other similar restraint of personal liberty," <u>id.</u>, does "the Constitution impose[] upon the State affirmative duties of care and protection with respect to certain individuals," <u>id.</u> at 198.

None of these circumstances apply to Plaintiffs.  Plaintiffs were neither incarcerated nor institutionalized at the time of the accident.  Nor did Dauphin County restrain Plaintiffs' liberty in any other manner that would give rise to the DeShaney special relationship.[11]  Therefore, "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief."  Conley, 355 U.S. at 45-46.  Moreover, the court finds that granting leave to amend this claim would be futile.  Alston, 363 F.3d at 236.  Thus, the court will grant Defendants' motions to dismiss with respect to Plaintiffs' special relationship claim and dismiss Count II of the amended complaint, with prejudice.

### 4.    Count III – Policy, Custom, or Practice

Plaintiffs fail to establish a policy, custom, or practice sufficient to support a § 1983 claim because they neither allege conduct that is sufficiently conscience-shocking nor allege a sufficient causal relationship between the alleged policy, custom, or practice and the resulting harm.

---

[11]  Plaintiffs' amended complaint attempts to establish a special relationship between Dauphin County and Plaintiffs by focusing on Defendant Blakely's status as an inmate of Dauphin County.  (See Doc. 7 ¶ 71.)  However, the authority cited by Plaintiffs, Kallstrom v. City of Columbus, fails to lend support to the premise that the relationship between Blakely and Dauphin County determines the relationship between Plaintiffs and Dauphin County.  136 F.3d 1055, 1066 (3d Cir. 1998) (considering possible § 1983 liability under the state-created danger theory where a special relationship did not exist).  Further, such a finding is clearly inconsistent with the well-established principles of DeShaney and its progeny that require a special relationship between the *injured party* and the State in order for the special relationship exception to apply.  See, e.g., Brown v. Grabowski, 922 F.2d 1097, 1100-01 (3d Cir. 1990).

To determine whether Plaintiffs have adequately alleged a policy, custom, or practice claim under § 1983, the court looks to the two-part test articulated in Collins: "(1) whether [Plaintiffs'] harm was caused by a constitutional violation, and (2) if so, whether [the Dauphin County and Blust Defendants are] responsible for that violation." 503 U.S. at 120.  A constitutional violation does not arise "*solely* because [a municipality] employs a tortfeasor–[] in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691.  However, when a municipality's failure to train employees results in a constitutional violation, § 1983 liability may be warranted.  City of Canton v. Ohio, 489 U.S. 378, 380 (1989).

Both deliberate indifference and causation are necessary elements of a policy, custom, or practice claim.  See id. at 385, 388; Sanford, 456 F.3d at 314.  The court's "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  City of Canton, 489 U.S. at 385; see also Kneipp, 95 F.3d at 1213.  The requisite causation turns on plaintiff's ability to "demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue."  Kneipp, 95 F.3d at 1213.  Causation fails where the "causal link" alleged is too attenuated, or where plaintiff is unable to establish that the policy, custom, or practice "proximately caused the constitutional violation."  Id.

Plaintiffs allege the following failures constituted policies, customs, or

practices within the work release program:

> (a) Failing to properly train and establish proper training procedures
> for Work Release officers, staff, and personnel . . . as to the proper and
> safe procedures for supervising and controlling prisoners on work
> release;
> (b) Failing to properly supervise and monitor performance and/or
> conduct regular performance reviews on Work Release officers, staff
> and personnel . . . on the proper and safe procedures for supervising
> and controlling prisoners on work release;
> (c) Failing to properly and adequately supervise inmates who are on
> work release to ensure that inmates without valid driver's licenses do
> not operate vehicles while their license is under suspension;
> (d) Failing to properly and adequately monitor and supervise inmates
> on work release to ensure that those inmates who had multiple DUI
> convictions and suspended licenses were not allowed to drive;
> (e) Failing to develop, implement and enforce appropriate procedures,
> directives, policies and protocol related to ensuring that multiple DUI
> offenders like Alton Blakely who had a suspended license for DUI
> were not allowed to drive a motor vehicle, park in the Work Release lot
> or go unsupervised.

(Doc. 7 ¶ 75.)

The court's prior review of Collins, 503 U.S. at 128, and Kaucher, 455 F.3d at

428-29, with respect to the culpability element of the state-created danger theory,

supports the court's conclusion here that Plaintiffs have failed to allege conscience-

shocking conduct.  The instant allegations regarding failure to train and supervise

are on par with Collins' issue of employee training regarding manhole risks and

Kaucher's failure to train a prison guard regarding potential infection.  As in those

cases, the conduct alleged here, while analogous to "a fairly typical state-law tort

claim," is not conscience-shocking in the constitutional sense.  See Collins, 503 U.S.

at 128.  In addition, causation, on the facts alleged, is simply too attenuated.  The

27

failures to train or supervise that are alleged here are not sufficiently immediate or direct to be the proximate or "but for" cause of the harm alleged.  Therefore, Plaintiffs' allegations fail to satisfy the causation requirement of § 1983.

Accordingly, the court will grant Defendants' motions to dismiss with respect to the policy, custom, or practice claim.  Because the court also finds this claim to be futile, <u>Alston</u>, 363 F.3d at 236, the court will dismiss Count III of the amended complaint, with prejudice.

In concluding that Plaintiffs' § 1983 claims must be dismissed, the court is not unmindful of the tragic circumstances surrounding this case.  However, the precise issue before the court – the sufficiency of these claims – must be considered within a framework that is characterized by "reluctan[ce] to expand the concept of substantive due process," and that calls for "self-restraint" and "the utmost care" when reviewing a substantive due process cause of action.  <u>Collins</u>, 503 U.S. at 125. Viewed against these guideposts, the amended complaint fails to state a claim under the Fourteenth Amendment and § 1983.

### C.   <u>State Law Claims</u>

The remainder of Plaintiffs' claims arise under state law.  Having dismissed the federal claims, the court no longer has jurisdiction over the state claims. "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  <u>Bright</u>, 443 F.3d at 286

(quoting <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995)). The court finds no affirmative justification here. Therefore, the court will dismiss the remainder of the claims in the amended complaint, without prejudice to Plaintiffs' rights to pursue those claims in state court. In so holding, the court expresses no opinion as to the merits of any such claims.

**IV.**     <u>**Conclusion**</u>

For the reasons set forth above, the court will grant the Dauphin County and Blust Defendants' motions to dismiss. An appropriate order will issue.


<u>  S/Christopher C. Conner  </u>
CHRISTOPHER C. CONNER
United States District Judge


Dated:      May 3, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE ESTATE OF CHARLENE** | : | **CIVIL ACTION NO. 1:06-CV-1945** |
| **PENDELTON, decedent, by and** | : | |
| **through the administratrix of the** | : | **(Judge Conner)** |
| **estate, TEAH PENDELTON, et al.,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TERRY DAVIS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 3rd day of May, 2007, upon consideration of the motions to dismiss filed by the Dauphin County Defendants and the Blust Defendants (Docs. 27 and 30, respectively), and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that the motions are GRANTED and Plaintiffs' amended complaint (Doc. 7) is DISMISSED, as follows:

1) Counts I, II, and III of Plaintiffs' amended complaint are DISMISSED, with prejudice.

2) Counts, IV, V, VI, and VII of Plaintiffs' amended complaint are DISMISSED, without prejudice to Plaintiffs' rights to pursue those claims in state court.

3) The Clerk of Court is directed to CLOSE this case.

        S/Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge